DANIEL v. LANE.   (No. 8228.)

(Court of Civil Appeals of Texas. Ft. Worth. June 19, 1915. Rehearing Dismissed by Agreement, Oct. 16, 1915.)

1. PARTNERSHIP ⬤⇒296—DISSOLUTION—PENDING MATTERS—SUFFICIENCY OF EVIDENCE.
     In an action by a former member of a real estate partnership for a share in the commission on a sale completed after the dissolution of the partnership, evidence held to support the jury's findings that the partnership contract was not terminated until March 1, 1914; that there was an agreement at the time of the dissolution that plaintiff should receive one-third of the commission on pending deals; that the deal in question was pending at the time of the dissolution; and that plaintiff did not become a member of another firm until March 1, 1914.
     [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 662, 663, 666–678; Dec. Dig. ⬤⇒296.]

2. PARTNERSHIP ⬤⇒296—DISSOLUTION — ACTIONS—INSTRUCTIONS—"PENDING."
     In such action the court did not err in connection with the issue as to whether the deal in question was pending at the time of the dissolution in defining the word "pending" as meaning remaining undecided, in suspense, not terminated.
     [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 662, 663, 666–678; Dec. Dig. ⬤⇒296.
     For other definitions, see Words and Phrases, First and Second Series, Pending.]

3. TRIAL ⬤⇒251, 350—DISSOLUTION OF PARTNERSHIP—INSTRUCTIONS — CONFORMITY TO PLEADINGS.
     In such action, where the petition alleged that, on or about January 20, 1914, while plaintiff and defendant were partners, negotiations were begun for a sale of land, through which negotiations the property was finally sold; that plaintiff and defendant dissolved partnership on March 1, 1914; that it was agreed between them at the time that all sales pending and which had been begun should continue to completion; and that upon completion defendant should have two-thirds of the commission and plaintiff one-third—a special issue as to whether the sale in question was a pending deal at the time of the dissolution, and an instruction in connection therewith that "pending" meant remaining un-

decided in suspense, not terminated, were sustained by the pleading.
     [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595, 828–833; Dec. Dig. ⬤⇒251, 350.]

4. PARTNERSHIP ⬤⇒296—ACTIONS—EVIDENCE.
     That a former member of a real estate partnership, claiming to be entitled to a share of a commission on a deal pending at the time of the dissolution, participated in a fee earned by another firm prior to March 1, 1914, did not conclusively show that the jury's finding that he became a member of such firm on March 1, 1914, was not sustained by the evidence.
     [Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 662, 663, 666–678; Dec. Dig. ⬤⇒296.]

5. TRIAL ⬤⇒350—SPECIAL ISSUES—ISSUES TO BE SUBMITTED.
     Special issues which were not put in controversy by the evidence, or were included in and controlled by issues which were submitted, were properly refused.
     [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ⬤⇒350.]

Error from District Court, Tarrant County; Marvin H. Brown, Judge.

Action by R. L. Lane against J. B. Daniel. Judgment for plaintiff, and defendant brings error. Affirmed.

J. C. Terrell and Thompson & Barwise, all of Ft. Worth, for plaintiff in error. Roy Rowland & Young, and Lattimore, Cummings, Doyle & Bouldin, all of Ft. Worth, for defendant in error.

BUCK, J. This suit was filed by R. L. Lane against J. B. Daniel. Plaintiff alleged that he and defendant were partners in the real estate business in the city of Ft. Worth. Tarrant county, Tex., under the firm name of J. B. Daniel Realty Company; that on or about the 1st day of January, 1912, the J. B. Daniel Realty Company listed a certain tract of land for sale, known as the Mitchell tract, consisting of 808 acres and lying some miles north of Ft. Worth; that on or about January 20, 1914, while plaintiff and defendant were partners and composing said firm, negotiations were begun for the sale of said land to one L. M. Lockridge, and that through said negotiations said property was finally sold by said firm to said Lockridge for the sum of $60,000; and that the report of sale was approved by the county judge of Tarrant county, sitting in probate on July 14, 1914. Plaintiff further alleged that he and defendant dissolved partnership on March 1, 1914, and that it was agreed by and between them at the time of said dissolution that all sales pending, and which had been begun during the term of said partnership, should continue to completion, and that upon completion of said sales said Daniel should have two-thirds of the commission and said Lane one-third. He alleged that $1,000 of the $3,000 commission had been retained by C. K. Lee, administrator of the Mitchell estate, and was held by said Lee to

await legal adjudication. Lee was therefore made a party defendant. In so far as the issues involved, which are necessary to be discussed, are concerned, the defendant denied that the dissolution of the partnership took place on March 1st, but alleged that said dissolution took place on January 1, 1914, and, while thereafter there was a semblance of partnership between him and plaintiff, yet on February 24th final dissolution of the partnership occurred, that the Mitchell deal was not then pending, nor was any agreement had between defendant and plaintiff as to the division of the commission on the sale of said property, and that in so far as the negotiations which finally resulted in the sale were concerned, they began subsequent to the dissolution of the partnership between him and plaintiff. The case was submitted to the jury on the following special issues:

"No. 1. When did the partnership contract between Lane, plaintiff herein, and defendant terminate? Ans. March 1, 1914.

"No. 2. What was the agreement between Lane and Daniel at the time of the dissolution of the partnership as to the division of commission on the pending deals? Ans. Daniel was to get two-thirds and Lane one-third.

"No. 3. At the time of the dissolution of the partnership between Lane and Daniel, was the sale of the Mitchell land a pending deal? By the word 'pending' is meant remaining undecided, in suspense, not terminated. Ans. At the time of the dissolution of the partnership the sale of the Mitchell land was a pending deal.

"No. 4. At what time did Lane become a partner in the firm of Blanton, Freeman & Lane? Ans. March 1, 1914."

Upon the answers of the jury, the court rendered a judgment for plaintiff for the amount sued for; the defendant prosecuted this writ of error.

The uncontroverted evidence shows that the property sold to Lockridge was shown to him by Daniel about January 20, 1914, and that an attempt was made by Daniel and Lockridge to negotiate a trade for the land at $80 per acre, Lockridge to put into the trade some business property in the city of Ft. Worth at a valuation of $16,000, but that C. K. Lee, as administrator, declined to consider any trade, and as testified to by Judge Daniel, defendant:

"I did not try to handle that part any further than we did, because Lee told me they would not accept it, and I dropped that feature of it. I took it up again after that; that was on the 24th of February."

It seems that some time prior to January 1st the defendant told plaintiff that he was not satisfied with the division of the profits, to wit, two-thirds to him and one-third to plaintiff, the expenses in the same ratio, and that he would suggest for the following years another basis of division, to wit, that he, defendant, should have all the profits derived from the out of county business, one-half of the city business, and one-third of the business in the county, but outside of Ft. Worth. Plaintiff replied that he would see about it and talk to defendant later, and so the matter rested apparently without any further discussion or other agreement, they continuing to divide their profits and expenses as during the previous year.

[1] It is practically admitted by plaintiff in error, both in his oral argument and in his brief, that if the answer to special issue No. 1 is supported by the evidence, the judgment should be sustained. The jury found that the partnership contract between plaintiff and defendant terminated March 1st. Upon this point, while the evidence is conflicting, we are of the opinion that it is sufficient to sustain the finding of the jury. Mr. Lane testified, in part, as follows:

"At the time the firm was dissolved there was an agreement between Daniel and myself in regard to any deals that were pending at that time. He mentioned it himself; he says, 'Now, all deals we have pending, we will still go ahead and divide the commissions as usual.' In fact, I was going to leave there a little before that; he asked me to stay until the 1st of March. * * * It was along about the 15th or 17th I told him that I would leave on the 1st of March. I do not know exactly the date, but just right about that time I told him I was going to leave, going to change places, and he says: 'You stay until the 1st of March, the bills will be coming in then, and it won't be any trouble in settling up, and we will just settle up the bills until the 1st of March. * * * I paid all the bills, my part of the bills, up to the 1st of March. * * * The way that talk of the 22d of February came up, I told him that I had made arrangements to leave there as soon as we could adjust things, that I was going in to another firm, and he says, 'Well, you better stay here until the first of the month,' which was the 1st of March. * * * My agreement with Blanton & Freeman as to when I was to start in was the 1st of March. That agreement was made with both of them. We made that agreement along about, I think, the middle of February, or maybe a little later. * * * I settled up in full with Judge Daniel by memorandum on the 1st of March for the expenses of the office for the month of January, but we did not pass any money; that was for all the back expenses that had fallen behind that we did not have the money to pay at the time. On the first of the month there was bills run over, and it had been a custom for bills to run over. Some bills had run over for several months, and I settled my whole part of it by memorandum; that is, by agreement on the 1st of March. I did not pay the money, though; he got the money and paid me the difference. That was about 30 days, I guess, after I left there. That settlement included the expenses of the firm for January and February."

Mr. Daniel as to this feature testified, in part, as follows:

"While he [plaintiff] was a member of the firm I took the party out who finally did purchase it to see it. He looked at it twice; I took him out to see it twice. Lane was at that time a partner in the firm; that is, he had been—I don't know when he left the firm—he had been up until the 1st of January. Lockridge and I first went out to the farm on the 20th of January. I do not know when Lane left the firm. I do not know when he formed the new partnership. I know when he left the office; that was on the 24th of February. I thought he was a member of the firm until the time he left, but I do not know that he was. * * * When he told me after I found his name on the door [meaning the door of the firm of Blanton, Freeman & Lane], and he told me he had gone down to that place and formed a

partnership. Then we dissolved, and that was on the 24th. That is when he ceased to be a member of the firm; that is, when all of our relationships ceased. * * * Q. Then when you showed Lockridge this farm on the 20th of January, Lane was a member of the firm, wasn't he? A. Well, I don't know whether he was or not. Q. Didn't you tell the jury a minute ago that he ceased to be a member of the firm on the 24th of February? A. Well, I don't know whether he was or not. He ceased his relationships up there on the 24th. Q. Are you in the habit of making a fellow pay part of the expenses of the firm when he is not a member? A. That was his suggestion, just figure the expense up on to the 1st. I sent him an expense bill for January of that year. He paid it. Q. Why was you making him pay an expense bill if he was not a member of the firm? A. It was the basis of our agreement that we would settle up; that he would settle up until the first of the month. Q. If you thought he ceased to be a member of the firm on the 1st of January, what did you send him the expense bill for January for? A. Well, he was sitting around there and enjoying the benefits of the firm and the office. Unfortunately we did not have any profits in January for him to share in. * * * Q. Was Lane a member of the firm after the 1st day of January? A. We treated each other as partners up to that time, up to the time he notified me that he had gone down there, until the time I found out, and then he told me on the day following that he had formed a partnership with the other people, but did not tell me when. That was in February. * * * Lane was a partner up until the 24th of February. We worked together and divided all the profits."

Upon issue No. 2 as to the agreement between plaintiff and defendant at the time of the dissolution of the partnership as to the division of commissions on the pending deals, Lane testified, in part, as follows:

"At the time the firm was dissolved there was an agreement between Daniel and myself in regard to any deals that were pending at that time; he mentioned it himself. * * * In fact, I was going to leave there a little before that; he asked me to stay until the 1st of March. He says, 'All the deals we have pending, we will go ahead and divide the commissions as usual.' * * * When I left the office, on February 25th, I did not agree with Mr. Daniel that whatever sales he made he would have the commission and whatever sales I made I would have the commission, except the Durrett-Vincent deal; I did not have any such agreement as that with Judge Daniel. Just before I left there, when I had the Durrett-Vincent deal up and he had the Mitchell farm deal up, that made him a deal and me a deal, that is when I told him I would leave, as I was going to leave, and he said, 'Well, whatever deals we have on, we will divide the commission as we have been doing, as usual,' and I said it was all right."

Upon this matter Judge Daniel testified in part as follows:

"As to any agreement between us that all pending matters should be—we should go ahead and carry them out on the same basis, he mentioned the Webb trade [meaning the Durrett-Vincent trade]; that we would go ahead and complete that, and I says: 'Now, Bob, I don't want us to have any disagreement in the future, now all business that we transact from now on, if you sell it, it will be your commission, and if I sell it, it will be my commission, and you can handle any of the customers that we have had in the office from now on and sell them what you can and take the commission, and if I sell them I will take the commission.'"

Without unduly enlarging this opinion by further quoting from the testimony, it is sufficient to say that, in our judgment, the verdict of the jury upon all of the issues presented is sustained by the evidence, and in so finding we dispose of most of plaintiff in error's assignments.

[2-4] We do not think there was any error in the court's giving, in connection with the third special issue submitted, a definition of the word "pending," nor do we find that said special issue, or the explanatory charge given in connection therewith, is not sustained by the pleadings of plaintiff, as complained of in the fifth assignment, section "A." Nor does the fact that the plaintiff participated in a fee earned by the firm of Blanton, Freeman & Lane prior to March 1st conclusively show, as claimed by plaintiff in error in his fifth assignment, section "B," that the answer of the jury to special issue No. 4 was not sustained by the evidence. While it may be unusual, yet we are not prepared to say that there is any rule of public policy which would preclude a man from being a member at the same time of two firms engaged in a similar business, and participating in the profits arising from each.

[5] Finding no errors shown in the failure of the court to submit special issues Nos. 5, 6, and 7, requested by plaintiff in error, as shown in the fifteenth, twelfth, and thirteenth assignments, because we believe that either said issues were not put in controversy by the evidence, or were included in and controlled by issues which were submitted, said assignments are overruled.

The judgment is affirmed.